Our first case today is number 23-1956, 23-1957, 24-1561, and 24-1562, United States v. Omoruyi and all. At this time, would counsel for Osaretan, God's Power, Omoruyi please come to the podium and introduce herself. Thank you. Good morning, Your Honors. I'm Jane Lee and I represent the appellant Osaretan Omoruyi. The district court in this case prejudicially erred when it responded to a note from the jury. The government in this case charged both defendants in single counts of the indictment with conspiracy to commit bank fraud and conspiracy to commit money laundering. They both charged a single conspiracy in each count. The jury, after the court instructed it, sent back a note to the court. That note said, as to element one per the indictment, did the government need to prove beyond a reasonable doubt that Henry conspired with Osaretan and Osaretan conspired with Henry? Or is evidence that they both had individual agreements with other co-conspirators enough? The court answered that. There was a lot of discussion about it. There was a lot of objection. It implicated multiple ideas and the court decided to answer that question as, no, they don't need to be in the same conspiracy. They don't need to conspire with each other. I think the real issue here, she says that, but she also says she references the indictment twice. I think your concern is, and the court I think maybe recognized this in the discussion back and forth, perhaps before anyone else did, is it possible that the jury could have convicted the brothers of different conspiracies? My concern and what I'd sort of like you to focus on is, when she then references the indictment twice in the answer to the jury, what is wrong with that and what prejudiced your client, moving beyond, by the way, whether you preserve this issue or not? It's not wrong, like when she says you can acquit one defendant and convict another. That's clearly not wrong. But it's what she didn't say. She needed to say, once they asked, can we convict them if they have individual agreements with other co-conspirators? She needed to say, the court needed to say, and the court recognized this. As you point out, they were the first one to recognize this. They needed to say, these defendants have to be in the same conspiracy. There's a single conspiracy now, and they both have to join that agreement. They cannot have individual agreements with other co-conspirators. And so when you reference the indictment for the jury and say, go back, look at the indictment that's in front of you, why doesn't that solve the problem? Because the jury's asked this question. The jury had the indictment in front of them. They're asking the question in context of the indictment. They say, on counts three and four, element one of the indictment. So they're asking it. They've seen the indictment. And they've also been told by the court earlier on that the law of multiple conspiracies, they've been told by the court, the government has charged a single conspiracy here, and you have to find that conspiracy and not some other conspiracy or multiple other conspiracies. So she's told them that, but they're still asking. And you understand why they're asking that, because they had separate bank accounts. They each had their own bank accounts. They each had their own false name. One was more employment fraud and one was more romance fraud. So it's reasonable that the jury's asking this question. The judge realizes the jury's asking this question. And once you realize the jury's asking this question, you have to tell them, if you find there are individual conspiracies, you must acquit, because that's the law of multiple conspiracy. If there's more than one illicit agreement, which is exactly what the jury's asking, individual agreements with other co-conspirators, you must acquit. And she needed to tell the jury that. She needed to say, you can't do this. You have to find that they joined a single conspiracy here. And was that argued below? That was argued below, Your Honor. This was preserved. The idea behind preservation is to alert the court to the issue. The court was alerted to the issue. The court itself stated the issue right away. The court said, but wouldn't that be another conspiracy when the government says, we can charge and or? And the court said, that'd be another conspiracy. So the court was alerted to the issue. The objections alerted them to the issue. The defendants objected over and over again. And it's a complicated issue that you do have that you can talk to other defendants. You don't even have to know about other defendants when you're in a conspiracy. You can acquit one and not acquit the other one. So there's a lot going on. But once they ask this question, you needed to tell them, you can't do this. You have to acquit if you think they're in different conspiracies. And that's prejudicial error, Your Honor. As to the bank fraud issue, the defendants were charged with bank fraud. In this case, the defendants did not commit bank fraud. There was insufficient evidence of the bank fraud charge. Bank fraud under either section requires that you deprive the bank of their property. And in this case, that didn't happen. This property that they got out of these accounts was never in the custody and control of the bank. They aren't depriving the bank. Well, can you say it's not under custody and control? Because it's deposited at X point in time from, even though it's, let's assume it's just for a second or two, it's in the custody of the bank during that period. Well, yes, Your Honor. But Laughlin makes clear that when we, that whole paragraph in section two where you say, obtain money or property owned by or in the custody and control of a federally insured bank, they said, we refer to that more briefly as intent to obtain bank property. And as against the defendants in this case, against the account holders, the bank did not have any custody and control of those funds. They didn't have any possessory rights in those funds. In Shaw, there was a different account. It wasn't the defendant's own account that they tried to access. They accessed the account of a different customer, not their own account. And then the court in Shaw said, no, the bank's the bailee for this. They have a right to this money. They're the bailee. And they have a right against everybody but the bailor. And in this case, the defendants are the bailors. Now, the government's going to say, no, the defendants aren't the bailors because they're not the account holders. They use false names and the false names are the account holders. And that argument might have some teeth if they'd used real people's identity. Maybe you could argue that they weren't the account holders, the real people, but they used false names. And you can't have fake people being the account holders. So they were the account holders in this case. And the bank doesn't have a superior right to this money. And the reason this is important is because you can convert every state fraud into a federal offense. That said, I'm not saying there's not a federal offense here. I mean, there's a federal offense of giving a false statement to a bank. It's just not this federal offense. It's not bank fraud because the property wasn't in their control. It's also not bank fraud because they're false. Your time is up. Oh, okay. Thanks. Thank you. Go, counsel. Thank you, counsel. At this time, would counsel for the other appellant please introduce himself on the record to begin? May it please the court, my name is Jinho King and I represent Osakpamon Henry Omoroi. I would ask for one minute. Oh, I'm sorry. You're reserved one minute. One minute for rebuttal. Thank you. Counselor, could you answer that same first question that Judge Montecalvo asked since you raised the same issue in your brief? I apologize. Could you remind me of your first question? I think it was, it's basically focusing in on the answer Judge Serris gave to the defendants and why when she references the indictment twice in the answer, doesn't that solve the problem of the worry that the jury would convict the two defendants of conspiring with different people? I don't have a better answer than my sister provided, but I will say that I think it concerns two separate issues in the sense that instructing based on indictment on its own isn't problematic, but in this circumstance, it was not enough because of the risk of the different conspiracies. I don't know if that satisfies Your Honor's question, but that's what our position is. Below, what supplemental instruction did you ask the court to give in response to that question? So, in this circumstance, there was an objection, and I think that's all really that is required for preserving the issue. I understand. I mean, orally, when you were arguing your objection, what did you suggest the court do or how did you suggest the court respond to the jury's question? I would have to look back at the record. I don't know offhand. I apologize. If the court permits, I'd like to kind of carry on with what my sister was arguing concerning the bank fraud issue.  Our position is similar in that we argue that the defendant's property interests were superior to the bank's, and this is based on some of the language in Shaw, where the bank's interests are superior to everyone but the owners who deposit the funds. Let's skip. I just have a couple of specific questions about the restitution hearing. And I apologize, but did you raise issues with the restitution hearing in your brief or was that your colleague? That was my colleague. Okay. Then I'll save that for rebuttal. Okay. Why don't you run through your materiality argument? You made an argument regarding the jury instructions there. And materiality ties into the issue of sufficiency of the bank fraud. And our contention is that the statements that were alleged to constitute the fraud, the using of a fake name to open up a bank account and then to withdraw money from that bank account was not material because materiality requires some natural tendency to influence or is capable of influencing something. And I think in this circumstance it really didn't make any difference whatever name they used because the evidence was, in fact, that they did use their own names to open bank accounts. So that's different from, for example, the Greenwood case where they couldn't open bank accounts in their own names. But they did both. They did both. That's right. And so the issue here is that when you use a name to open up a bank account, when it's not someone else's name, that is your bank account. But when you use a false name, it's a situation where if the bank had known it was false, they would not have allowed you to open up the account. Well, let's look at the circumstances. So I can kind of think of three scenarios. One where you use your actual name and you give it to the bank and the bank allows you to open it, which is what happened in part of this case. Another circumstance is where you use a fake name, but then you tell the bank that you are using a fake name, like, you know, I'm not Jin Ho King. I'm someone else, but here's a fake ID. The bank obviously would not allow me to open up that account. And so that's not this circumstance, but that's one possibility. And then the third is what was presented in this case, where someone uses a name that is not their own, holds it out as their own, and the bank does whatever, you know, checking that they do and says, okay, we'll allow you to open up this account, which is what happened here. Now, of those circumstances. I'm sorry, are you saying that your client did not present false identification? Well, we're saying that the evidence showed that they did. So I'll leave it at that point. But my point is simply that when you have a circumstance where the bank is opening up the account and then just based on the name and then allowing you to deposit money and then withdraw money, it doesn't really matter to the bank other than, for example, what banking regulations may govern the bank itself. But that's outside of the bank fraud issue. Right. This is part of the reason why the Supreme Court has said, you know, we don't really look into whether there's harm specifically to the bank because now we're getting into the intricacies of, you know, banking regulations and we don't need to do that. Right. And I'm saying this is the same thing. We don't need to look at the intricacies of banking regulations about what they need to do to confirm whether someone is who they claim to be. Because for them, they're just holding someone's money for them. They are incidental to the fraud in the other sense. Right. If we're talking about romance scams or the other ways in which the defendants were alleged to have obtained this money. Well, the point is that the banks are really incidental to it. Right. They were really just holding the things like in law for in the United States Supreme Court talked about the selling a fake Louis Vuitton bag. Right. And then depositing the check. Well, the bank is kind of incidental to that. And so it's what you said is incidental. And in the sense that you mean, I get what you mean. And you say we shouldn't get into bank regulations. But is there some harm that befalls the bank as a result of opening up an account with a false name? Well, I will say that there is certainly a specific benefit to the bank. Right. Because they get the benefit of the funds. And it's different from the cases where they were intentionally overdrawing the funds using the fake names. Right. There's I think that's Morgan Field, for example. Right. Those cases are distinct because those cases are ones involving situations where the defendants are trying to take away from the bank more than what they put in. Right. But that's not what happened here. Here, money was put in and then money was taken out that the banks actually got the benefit of. Right. This would be a really weird situation if we had banks able to say, well, you use a fake name. And so now all this money is mine because it's no one else's. Right. Our claim is now superior to the rest of the world's because the only other person more superior than us is the owner. But there's no such owner. And I see my time is up. Barring any questions, I will wait until the ball. Thank you. Thank you. Thank you, counsel. At this time, when counsel for the United States, please introduce himself on the record to begin. Good morning, Judge Halperin. May it please the Court? Mark Quinlivan on behalf of the United States. Let me begin with the sufficiency claim because I think the most straightforward way to analyze this is under Section 1344.2 of the Bank Fraud Statute. As the Court is well aware, that requires or makes it unlawful for anyone to engage or attempt to engage in a scheme or artifice to obtain monies or funds under the custody or control of a financial institution by means of false or fraudulent representations, promises. And in this case, the jury could readily find that that was proven beyond a reasonable doubt. Both defendants opened But doesn't your interpretation suggest that once they give it to the bank that they don't have a right to get it back? It's not as if they're trying to obtain money beyond what they're depositing with the bank. I understand, Judge Thompson, but to the extent – well, I think two points. First off, 1344.2 talks about a scheme that involves false or fraudulent representations. And that was absolutely proven in this case because both defendants opened accounts using fake passports, fake identities, but their own pictures. There was evidence that federal law, of course, requires that banks obtain identification to verify anyone who is opening an account. There is testimony that TD Bank therefore requires identification of anyone, which can include a driver's license or a passport. And there further was testimony from a TD Bank representative that they would not have opened an account if they had known that this was a fake identity. So you're saying that the way the statute is set up, the harm to the bank is the fact that they were presented false identification and went through the process of opening up an account and nothing more is required? Because that's part of the scheme. Yes, that's part of the scheme to obtain money under the custody or control of TD Bank. Even if it's their money? Well, once again, that gets into this distinction between if you use a false identity, it's your money. We don't agree with that. But under 1344.2, that whole distinction that the Supreme Court drew in Shaw between that the bank has a right to funds that are deposited against anyone else but the person who opened the account, that is a distinction that comes into play with respect to 1344.1. 1344.2 doesn't require that. It only requires that the funds be under the custody or control of the bank. That absolutely was the case, and as we noted, the scheme here was to open accounts under fake identities, which would allow them to mask who was depositing monies into these accounts, and then they withdrew money from these accounts using the ATM cards that had the fake identities that they had presented to TD Bank, Clifford Bernard and Nelson Bright. And a jury could find from that evidence that the defendants committed bank fraud. If I could turn quickly to the supplemental instruction, because I know there was a discussion of that. Yeah, and can you specifically address this? Because the district court's answer, I think she says, you do not need to find that they conspired with each other. And I think that's part of the worry, right? That the jury could have convicted the defendants even if they found they participated in other different conspiracies, right? So while I think you probably noticed, I think, reference in the indictment is a really good part of this answer. I think the defendants have raised a concern to sort of that part. Well, two answers to that, Judge Montecapo. To begin with, I think the answer given by the district court, and this was in response to the specific objection that the defendant had raised. And the specific objection was the indictment charged that the two defendants conspired with each other. So you can't say that the jury can convict if they conspired with someone else. But in fact, the indictment said that they conspired with each other and with other persons known or unknown to the grand jury. Now, this court's precedents make clear that even when an indictment charges in the conjunctive, it can be proven in the disjunctive. And so the district court's instruction that the defendants did not need to have conspired with each other, but they needed to have conspired with at least one other person as charged in the indictment, is entirely consistent with this court's precedents. And that doesn't mean, as my friend has suggested, that the defendants engaged in different conspiracies. The conspiracy is the agreement. It's not the group. So in this case, if each defendant had been tried separately, there could be no possible claim that the defendant is making here if the district court had given the same instruction it gave. So the claim appears to be that, well, that allowed the jury to convict Henry Oumaroui of conspiring with Person A and Osirita Oumaroui with Person B. That, yes, the jury could so find, and that is entirely consistent with the conclusion that it was a single conspiracy. Because, again, the conspiracy is the agreement to commit bank fraud or money laundering conspiracy. Do you want to briefly discuss the jurisdiction or the argument about the restitution hearing? Yeah, on jurisdiction, two points. I mean, I think the Supreme Court, first off, the statute itself allows for the possibility that a district court can enter a restitution order following the judgment. And the Supreme Court has made that clear in both the Dolan and the Manreid cases. And as we noted in our brief, actually, the standard judgment form expressly allows the court to basically check a box and say restitution is deferred until a certain date. That's exactly what the district court did in this case. And, you know, every court of appeals that has considered a similar jurisdictional claim has rejected it on that basis. And I think the very fact that both defendants appropriately noticed appeals from the amended judgments that included the restitution order itself recognizes that principle. Thank you. Let me go back to the conspiracy issue. So what you're saying is there is one big, large conspiracy, all the conspiracies, and then defendant number one and defendant number two are part of that conspiracy, even though they don't directly participate with each other or conspire with each other, but they know there's other members and each of them happen to be some of those other members. That's what you're arguing, correct? Yes. And, you know, there are any number of cases in which defendants are tried together. And if the defendant's argument were correct, then, you know, the government would need to prove beyond a reasonable doubt that each defendant conspired with each other defendant who was on trial, and that simply isn't the law. So contrary to what opposing counsel is saying, it's not, it's two conspiracies. It's just one big conspiracy. And I would, you know, from my experience, where you're saying it's analogous to like a drug conspiracy where you have the owner of the drug point, you can have a seller, you can have the distributor, you can have the hitman, and the hitman doesn't know the seller or doesn't know each other, but they all know they're part of that conspiracy operating for this purpose. That's exactly correct, Judge Helpe. And, again, I just go back to the point. The conspiracy is the agreement. It's not the group. Any further questions? We'll rest on our brief on the other issues. Thank you. Rebuttal, one minute each. Please reintroduce yourself on the record to begin. I'm Jane Lee, representing Osardan Omorari. So I just didn't really understand your argument that our case, I'm not sure how to pronounce it, but Nefrain means that we don't have jurisdiction over the restitution portion of this. Well, the restitution issues, yes, we got it right, both counsel, but it's a very confusing issue. And I think this Court has said in Nefrain that Nefrain, the court below issued a provisional order of a certain amount, $400,000. And added to that, the Court of Appeals stayed the appeal of the judgment pending the restitution. That didn't happen in this case. The appeal went forward. And there was no stay. And there was no provisional order. There was just like, we'll get to restitution. I'm going to give restitution. But there was no provisional order. And this court said that it's only in those unusual circumstances where it stayed and where there was a provisional order that you have jurisdiction. And that's because jurisdiction is really confusing when it's in both the district court and this court. And it's confusing for the counsel to have to remember to object again. Thank you. And just quickly, the U.S. Attorney says the key here is agreement, not participants. But the jury's, everything is in light of the jury's question. And the jury's question was about agreements, agreements, individual agreements. Thank you. Thank you, counsel. Mr. King, please reintroduce yourself fully on the record to begin. Thank you. My name is Jin Ho King on behalf of Henry O'Maroy. And I did want to acknowledge that his wife, Katya, too, is present in the courtroom as well. So I wanted to very quickly just address, again, on the sufficiency issue, the question about, you know, the distinction perhaps if it's based on a scheme or something, as the government argued. I will say even under 1344-2, materiality really is central because if he had used his own name, the outcome would be the same from the bank's perspective. He used his own name to open the account. He used his own name to take the money out. That is the exact same circumstances if he used the fake name to open the account, to deposit money, and then to draw the money out. Same outcome. There's no difference. And because there's no difference, it shouldn't be seen as material in this circumstance. Obviously, there are other circumstances that are not this case where they use someone else's name or someone else's credentials to open up an account. That could be material, but that's not this case. Thank you, counsel. Thank you. You're excused. Thank you, counsel. That concludes argument in this case.